## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| CELLTRACE LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>METROPCS COMMUNICATIONS, INC. and METROPCS WIRELESS, INC.,<br><br>        Defendants and Counterclaim Plaintiffs. | Civil Action No. 6:09-cv-371-LED<br><br>**JURY TRIAL DEMANDED** |
| METROPCS COMMUNICATIONS, INC. and METROPCS WIRELESS, INC.,<br><br>        Counterclaim Plaintiffs,<br><br>    v.<br><br>CELLTRACE LLC, ACACIA PATENT ACQUISITION, LLC, and ACACIA RESEARCH CORPORATION,<br><br>        Counterclaim Defendants. | |

## METROPCS WIRELESS, INC.'S ANSWER,
## AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendant and Counterclaim Plaintiff MetroPCS Wireless, Inc. ("MetroPCS"), hereby files its Answer and Counterclaims to Plaintiff's First Amended Complaint (Docket No. 23), in accordance with the Court's Docket Control Order in the above-referenced action (Docket No. 46). By filing this Answer, Affirmative Defenses, and Counterclaims, MetroPCS does not withdraw or otherwise waive any right to relief sought by the pending motion to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which

relief can be granted or, in the alternative, for a more definite statement pursuant to Fed. R. Civ. P. 12(e).  (Docket No. 32.)

## ANSWER TO COMPLAINT

### The Parties

1.     MetroPCS lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the First Amended Complaint and therefore denies them.

2.     MetroPCS admits the allegations contained in paragraph 2 of the First Amended Complaint.

3.     MetroPCS admits the allegations contained in paragraph 3 of the First Amended Complaint.

### Jurisdiction And Venue

4.     MetroPCS admits that the First Amended Complaint purports to set forth an action arising under the patent laws of the United States, codified at 35 U.S.C. § 1, *et seq.*, but denies that there are any factual or legal bases for Plaintiff's claims.  MetroPCS further admits that the Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.     MetroPCS concedes personal jurisdiction and venue in this judicial district for the limited purpose of this action.  To the extent that paragraph 5 of the First Amended Complaint contains any other or different allegations, they are so vague and indefinite and, as set forth in MetroPCS's pending motion to dismiss, insufficient to plausibly show entitlement to relief under any legally recognized theory of patent infringement, that MetroPCS lacks knowledge or

information sufficient to form a belief as to the truth of these remaining allegations and therefore denies them.

6.      As set forth in MetroPCS's pending motion to dismiss, the Plaintiff has failed to allege sufficient facts plausibly showing entitlement to relief under any legally recognized theory of patent infringement.  MetroPCS thus lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the First Amended Complaint and therefore denies them.

### Patent Infringement

7.      MetroPCS admits that U.S. Patent No. 7,551,933 ("the '933 patent"), entitled "Telecommunications System," issued on June 23, 2009, and that a document that purports to be a copy of the '933 patent was attached as Exhibit A to the First Amended Complaint. MetroPCS denies that the '933 patent was duly and legally issued.  MetroPCS lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 7 of the First Amended Complaint and therefore denies them.

8.      As set forth in MetroPCS's pending motion to dismiss, the Plaintiff has failed to allege sufficient facts plausibly showing entitlement to relief under any legally recognized theory of patent infringement.  MetroPCS thus lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of the First Amended Complaint and therefore denies them.

### Count I - Infringement Of The '933 Patent

9.      With respect to paragraph 9 of the First Amended Complaint, MetroPCS incorporates by reference its responses to the allegations contained in paragraphs 1 through 8 of the First Amended Complaint as set forth above.

10.     As set forth in MetroPCS's pending motion to dismiss, the Plaintiff has failed to allege sufficient facts plausibly showing entitlement to relief under any legally recognized theory of patent infringement.  MetroPCS thus lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the First Amended Complaint and therefore denies them.

11.     As set forth in MetroPCS's pending motion to dismiss, the Plaintiff has failed to allege sufficient facts plausibly showing entitlement to relief under any legally recognized theory of patent infringement.  MetroPCS thus lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11 of the First Amended Complaint and therefore denies them.

### Prayer for Relief

12.     MetroPCS denies that Plaintiff is entitled to any relief whatsoever in this action, either as prayed for in the First Amended Complaint or otherwise.

13.     MetroPCS further denies each and every allegation contained in the First Amended Complaint to which MetroPCS has not specifically responded.

### AFFIRMATIVE AND OTHER DEFENSES

MetroPCS alleges and asserts the following defenses in response to the allegations of the First Amended Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.

### First Defense

14.     The First Amended Complaint fails to state a claim upon which relief can be granted.

## Second Defense

15.    MetroPCS does not infringe and has not infringed any claim of the '933 patent, either directly or indirectly, or literally or under the doctrine of equivalents.

## Third Defense

16.    The claims of the '933 patent are invalid for failure to comply with one or more of the conditions for patentability as set forth in Title 35 of the United States Code, including without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

## Fourth Defense

17.    Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

## Fifth Defense

18.    Plaintiff's claims are barred in whole or in part by the doctrine of patent misuse.

## Sixth Defense

19.    Plaintiff and others involved in the prosecution of the application that led to the '933 patent and/or related applications unreasonably and inexcusably delayed seeking and obtaining the claims of the '933 patent, which constitutes prosecution laches and renders the '933 patent unenforceable.

## Seventh Defense

20.    Plaintiff is estopped based on statements, representations, and admissions made during prosecution of the patent application that led to the '933 patent and/or related applications, from asserting any interpretation of the claims of the '933 patent that would be broad enough to cover any of MetroPCS's products or services.

**<u>Eighth Defense</u>**

21.    The '933 patent is unenforceable because of inequitable conduct by the applicants, their attorneys, and/or agents during the prosecution of U.S. Patent Application No. 10/215,989 ("the '989 application"), which issued as the '933 patent on June 23, 2009.

22.    Individuals associated with the filing and prosecution of the '989 application that owed a duty of candor and good faith to the United States Patent & Trademark Office ("PTO") include, for example, the applicants Wayne Michaels, Anthony Timson, and Aden Dervan (collectively, "applicants"), and prosecuting attorneys such as Richard Stevens, Steven Olsen, C. Scott Talbot, Malcolm Pipes, and Robert Groover (collectively, "prosecuting attorneys").

23.    Upon information and belief, each of the applicants knew of his duty of candor and good faith in connection with filing and prosecuting the '989 application before the PTO. For example, on January 19, 1996, Wayne Michaels, Anthony Timson, and Aden Dervan each signed a declaration submitted to the PTO during prosecution of the '989 application, representing to the PTO that, among other things:  (i) "I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled:  Telecommunications Systems, the specification of which … was filed as United States Application Serial No. 08/557,147 on December 14, 1995 and was amended on December 14, 1995"; and (ii) "I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, § 1.56(a)."

24.     Upon information and belief, each of the prosecuting attorneys knew of his duty of candor and good faith in connection with filing and prosecuting the '989 application before the PTO.

25.     Upon information and belief, the applicants and prosecuting attorneys committed inequitable conduct by failing to disclose material information to the PTO during prosecution of the '989 application, with an intent to mislead or deceive the patent examiner.

26.     Upon information and belief, during prosecution of the '989 application, the applicants and prosecuting attorneys were all aware of the existence and materiality of the prior art GSM telecommunications system and related prior art GSM standards documents.  For example, the specification and claims of the '933 patent repeatedly reference the GSM telecommunications system and disclose that the GSM system is an example of a common standard, for example at Figs. 1-2, 4; col. 2, ll. 49-51; col. 3, ll. 11-15, 23-26, 64-67; and claims 1, 4-5, 8, 9-14, and 20.  The prosecuting attorneys also made various arguments distinguishing the GSM system and standards, including those described below, among others.

27.     Upon information and belief, despite knowledge of the prior art GSM telecommunications system and related prior art GSM standards documents, the applicants and prosecuting attorneys failed to disclose the majority of the published GSM standards documents to the PTO.

28.     Upon information and belief, the applicants and prosecuting attorneys, with an intent to mislead or deceive the patent examiner, selectively disclosed only portions of the GSM standards documents to the PTO, and withheld other non-cumulative and much more material portions of the GSM standards documents.  For example:

a.    GSM Standard 2.01, v. 3.2.0 (Feb. 1992) is prior art to the '933 patent, and was not disclosed to or considered by the PTO.

b.    GSM Standard 2.03, v. 3.4.0 (Feb. 1992) is prior art to the '933 patent, and was not disclosed to or considered by the PTO.

c.    GSM Standard 2.06, v. 3.2.0 (Feb. 1992) is prior art to the '933 patent, and was not disclosed to or considered by the PTO.

d.    GSM Standard 2.07, v. 3.4.1 (Feb. 1992) is prior art to the '933 patent, and was not disclosed to or considered by the PTO.

e.    GSM Standard 2.30, v. 3.9.0 (Feb. 1992) is prior art to the '933 patent, and was not disclosed to or considered by the PTO.

f.    GSM Standard 3.02, v. 3.1.4 (Feb. 1992) is prior art to the '933 patent, and was not disclosed to or considered by the PTO.

g.    GSM Standard 3.40, v. 3.5.0 (Feb. 1992) is prior art to the '933 patent, and was not properly disclosed to or considered by the PTO.

h.    GSM Standard 4.01, v. 3.0.1 (Feb. 1992) is prior art to the '933 patent, and was not disclosed to or considered by the PTO.

i.    GSM Standard 4.02, v. 3.0.2 (Feb. 1992) is prior art to the '933 patent, and was not disclosed to or considered by the PTO.

j.    GSM Standard 4.03, v. 3.0.3 (Feb. 1992) is prior art to the '933 patent, and was not disclosed to or considered by the PTO.

k.    GSM Standard 4.05, v. 3.1.5 (Feb. 1992) is prior art to the '933 patent, and was not disclosed to or considered by the PTO.

l.      GSM Standard 4.06, v. 3.9.0 (Feb. 1992) is prior art to the '933 patent, and was not disclosed to or considered by the PTO.

m.      GSM Standard 4.07, v. 3.3.3 (Feb. 1992) is prior art to the '933 patent, and was not disclosed to or considered by the PTO.

n.      GSM Standard 4.08, v. 3.13.0 (Feb. 1992) is prior art to the '933 patent, and was not disclosed to or considered by the PTO.

o.      GSM Standard 4.11, v. 3.3.0 (Jan. 1993) is prior art to the '933 patent, and was not disclosed to or considered by the PTO.

p.      GSM Standard 4.22, v. 3.7.0 (Feb. 1992) is prior art to the '933 patent, and was not disclosed to or considered by the PTO.

q.      GSM Standard 7.01, v. 3.13.0 (Feb. 1992) is prior art to the '933 patent, and was not disclosed to or considered by the PTO.

29.     The withheld GSM standards documents establish, by themselves or in combination with other prior art, including the prior art of record before the PTO, a *prima facie* case of unpatentability of one or more claims of the '933 patent.

30.     Upon information and belief, the applicants and/or prosecuting attorneys also committed inequitable conduct by making material misrepresentations to the PTO during prosecution of the '989 application, with an intent to mislead or deceive the patent examiner.

31.     For example, throughout the course of the prosecution of the '989 application, the applicants and prosecuting attorneys repeatedly characterized the alleged inventions as directed towards removable modules and/or SIM cards for GSM-compatible cellular telephone systems, and limited their prior art disclosures to the PTO accordingly, even though, upon information and belief, they intended to assert one or more claims more broadly in a manner inconsistent with

9

arguments made to the patent examiner. Upon information and belief, the applicants' and prosecuting attorneys' characterizations, arguments, and selective disclosures of prior art were made with an intent to mislead or deceive the patent examiner.

32. For example, on page 18 of the September 25, 2005, amendment and response to office action (paper no. 25) filed during prosecution of the '989 application, prosecuting attorney C. Scott Talbot represented to the PTO that in the prior art, "All message processing was handled by the handset. This is evidenced by the GSM standard in effect at the time of the priority filing date of the present application (June 1994). This standard (GSM 11.11 version 3.10.0 February 1992) was the only standard applicable to telecommunications systems with removable modules." Contrary to C. Scott Talbot's representation to the PTO, however, many other prior art GSM standards documents, including one or more of the withheld standards documents referenced above, were applicable to telecommunications systems with removable modules.

33. As another example, on page 18 of the September 25, 2005, amendment and response to office action (paper no. 25) filed during prosecution of the '989 application, prosecuting attorney C. Scott Talbot characterized the GSM prior art by representing that "It was not until 1996 that the [GSM] standards were amended to allow for the messaging conduit to include programming information and for this functionality to provided [sic] in the SIM. At the time the invention was made, the relevant standard not only specified a single format for messaging, it provided that the handset reads and analyzes header information in such messages." Contrary to C. Scott Talbot's representation to the PTO, however, the prior art GSM standards documents, including one or more of the withheld standards documents referenced above, disclosed messaging conduits that included programming information and also specified multiple formats for messaging.

34.    As another example, on pages 2-3 of the March 13, 2007, arguments in support of pre-appeal brief request for review (paper no. 31) filed during prosecution of the '989 application, prosecuting attorney C. Scott Talbot represented to the PTO that "Further, the Examiner seems to apply the present state of the art, instead of the appropriate state of the art when the invention was made. At the time of the priority filing date for the current application, the only standard applicable to telecommunications systems with removable modules was the GSM standard. The relevant GSM standard (GSM 11.11 version 3.10.0 February 1992) specified a single format for messaging - there were no enhanced messages for communicating with the module." Contrary to C. Scott Talbot's representation to the PTO, however, there were many other GSM standards relevant to messaging, including one or more of the withheld standards documents referenced above.

35.    As another example, on page 3 of the March 13, 2007, arguments in support of pre-appeal brief request for review (paper no. 31) filed during prosecution of the '989 application, prosecuting attorney C. Scott Talbot represented to the PTO that "There was only one type of message (the SMS "text" message) and no analysis of the messages was performed in the module…. It was not until 1996, three years after the priority filing date, that the standards were amended to allow for the messaging conduit to include programming information and for this functionality to be provided to the SIM." Contrary to C. Scott Talbot's representation to the PTO, however, there were other types of messages disclosed in the prior GSM standards, including one or more of the withheld standards documents referenced above, SMS messages in the prior art GSM standards were not limited to "text," and the prior art GSM standards allowed for messaging conduits that included programming information.

36.     As another example, prosecuting attorney Robert Groover submitted at least one material prior art GSM standards document to the PTO in an information disclosure statement dated February 14, 2008 (paper no. 40) filed during prosecution of the '989 application, but withheld the publication date for this GSM standards document.  On page 2 of the office action dated April 24, 2008 (paper no. 41), the examiner advised prosecuting attorney Robert Groover that "The information disclosure statement filed on 2/14/2008 fails to comply with the provisions of 37 CFR 1.97, 1.98 and MPEP § 609 because some of the cited documents (namely, documents no. 5, 6, 10, and 11) do not have their corresponding publication dates.  It has been placed in the application file, but the information referred to therein has not been considered as to the merits." Upon information and belief, despite knowing the materiality of at least document no. 6 (GSM Standard 3.40, v. 3.5.0 (Feb. 1992)), neither prosecuting attorney Robert Groover nor anyone else resubmitted this reference or informed the patent examiner of its publication date, and thus the applicants and prosecuting attorneys knew that it had not been considered by the patent examiner.

37.     Upon information and belief, these misrepresentations and withholdings of prior art were material to patentability, and demonstrates inequitable conduct on behalf of at least the applicants and prosecuting attorneys, rendering the '933 patent unenforceable.   MetroPCS further reserves the right to rely upon any additional evidence of inequitable conduct learned during the course of discovery in this action.

## Other Defenses

38.     MetroPCS reserves the right to allege additional defenses as they become known during the course of discovery, and following resolution of its pending motion to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which

12

relief can be granted or, in the alternative, for a more definite statement pursuant to Fed. R. Civ. P. 12(e). MetroPCS further reserves the right to allege any additional defenses that are not otherwise deemed affirmative defenses by law.

## COUNTERCLAIMS

Counterclaim Plaintiff MetroPCS Wireless, Inc. ("MetroPCS"), for its counterclaims against Celltrace LLC ("Celltrace"), and its corporate alter egos, Acacia Patent Acquisition, LLC and Acacia Research Corporation (collectively, "the Acacia Entities"), alleges as follows:

### The Parties

39. MetroPCS Wireless, Inc. is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 2250 Lakeside Boulevard, Richardson, Texas 75082.

40. Upon information and belief, Celltrace LLC ("Celltrace") is a company organized and existing under the laws of the State of Texas with a principal place of business at 500 Newport Center Drive, 7th Floor, Newport Beach, California 92660.

41. Upon information and belief, Acacia Patent Acquisition, LLC is a company organized and existing under the laws of the State of Delaware with a principal place of business at 500 Newport Center Drive, 7th Floor, Newport Beach, California 92660.

42. Upon information and belief, Acacia Research Corporation is a company organized and existing under the laws of the State of Delaware with a principal place of business at 500 Newport Center Drive, 7th Floor, Newport Beach, California 92660.

### Jurisdiction And Venue

43. This Court has subject matter jurisdiction over Counterclaim Counts I, II, and III pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and 28 U.S.C. §§ 1331 and 1338(a).

44. This Court has subject matter jurisdiction over Counterclaim Count IV pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1367.

45. This Court has subject matter jurisdiction over Counterclaim Count V pursuant to 28 U.S.C. §§ 1338(b) and 1367.

46. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c), and 28 U.S.C. § 1400(b).

### Relationship Between Celltrace And Acacia

47. Upon information and belief, Celltrace is wholly owned by Acacia Patent Acquisition, LLC.

48. Upon information and belief, Acacia Patent Acquisition, LLC is wholly owned by Acacia Research Corporation.

49. Upon information and belief, Celltrace and the Acacia Entities share common officers, board members, and employees.

50. Upon information and belief, Celltrace is not operated as a separate legal entity from the Acacia Entities. For example, upon information and belief, Celltrace and the Acacia Entities share office space and employees, and the Acacia Entities finance and actively control Celltrace's principal business, including licensing and enforcement efforts, along with related expenses.

51. Upon information and belief, an agreement dated on or about November 1, 2007, purporting to assign rights to the '989 application and patents issuing from the '989 application, from British Technology Group Inter-Corporate Licensing Limited to Acacia Patent Acquisition Corporation, was recorded in the PTO on or about March 5, 2008.

52.     Upon information and belief, an agreement dated on or about February 12, 2008, purporting to assign rights to the '989 application and patents issuing from the '989 application, from Acacia Patent Acquisition Corporation to Celltrace LLC, was recorded in the PTO on or about March 5, 2008.

53.     Upon information and belief, the Acacia Entities created Celltrace LLC on or about January 15, 2008, identifying Acacia Patent Acquisition Corporation as the sole officer of the company.

54.     Upon information and belief, Acacia Patent Acquisition Corporation is the predecessor company to Counterclaim Defendant Acacia Patent Acquisition, LLC.

55.     Celltrace's Initial Disclosures served in this action, dated January 8, 2010, identified at least two individuals affiliated with the Acacia Entities as knowledgeable about the subject matter of this action, including Clayton Haynes and David White, but not a single officer, director, or employee of Celltrace with knowledge of any relevant fact at issue in this action.

56.     Acacia employee David White has represented to MetroPCS that he is also affiliated with Celltrace.

57.     Upon information and belief, the Acacia Entities undercapitalized Celltrace in an effort to avoid liability for claims such as those contained herein, and shielding the Acacia Entities from liability would result in injustice and fundamental unfairness.

58.     Upon information and belief, neither Celltrace nor the Acacia Entities manufacture or sell products.

59.     Upon information and belief, the Acacia Entities have engaged in a pattern of creating hundreds of business entities in the State of Texas and elsewhere for the purpose of

15

asserting patent infringement claims for their benefit while at the same time avoiding potential liability.

60.    Upon information and belief, examples of some of the entities created and controlled by the Acacia Entities in this State include:  (a) Anti-Pinch Solutions LLC; (b) Bypass Devices LLC; (c) Cardio Access LLC; (d) Celltrace LLC; (e) Child Protect LLC; (f) Data Detection Systems LLC; (g) DRAM Technologies LLC; (h) Fast Memory Erase LLC; (i) Light Transformation Technologies LLC; (j) Lighting Ballast Control LLC; (k) Optimum Power Solutions LLC; (l) Or Mapping LLC; (m) Position Sensing Systems LLC; (n) Site Update Solutions LLC; (o) Smartphone Technologies LLC; (p) Supply Chain Finance Systems LLC; (q) Teleconference Systems LLC; (r) Thermal Scalpel LLC; (s) Unified Messaging Solutions LLC; (t) Vehicle Occupant Sensing Systems LLC; (u) Video Enhancement Solutions LLC; and (v) WebMap Technologies LLC.

61.    Upon information and belief, examples of some of the actions initiated in this District by entities created and controlled by the Acacia Entities include:  (a) Cardio Access LLC v. Boston Scientific Corp., *et al.*, E.D. Tx. Civil Action No. 2:08-cv-260; (b) Document Generation Corporation v. Allscripts LLC, *et al.*, E.D. Tx. Civil Action No. 6:08-cv-479; (c) Emsat Advanced Geo-Location Technology, LLC and Location Based Services LLC v. Virgin Mobile USA, L.P., *et al.*, E.D. Tex. Civil Action No. 2:09-cv-91; (d) International Printer Corp. v. Brother International Corp., *et al.*, E.D. Tex. Civil Action No. 2:07-cv-361; (e) Optimum Power Solutions LLC v. Apple Inc., *et al.*, E.D. Tex. Civil Action No. 6:10-cv-61; (f) Smartphone Technologies LLC v. Research in Motion Corp., *et al.*, E.D. Tex. Civil Action No. 6:10-cv-74; (g) Software Tree, LLC v. Oracle Corporation, E.D. Tex. Civil Action No. 6:08-cv-126; (h) Software Tree, LLC v. Red Hat, Inc., *et al.*, E.D. Tex. Civil Action No. 6:09-cv-97;

16

and (i) Webmap Technologies LLC v. City Accommodations Network, Inc., *et al.*, E.D. Tex. Civil Action No. 2:09-cv-343.

62. Upon information and belief, the Acacia Entities should be treated as the alter egos of Celltrace because there is a unity of interest and ownership such that they are not truly separate entities, and an unfair and inequitable result will follow if the acts of the Acacia Entities are not treated as the acts of Celltrace, and vice versa.

63. To the extent that the Acacia Entities are not treated as the alter egos of Celltrace, and vice versa, Celltrace should be treated as an agent of the Acacia Entities.

## COUNT I

## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '933 PATENT

64. MetroPCS incorporates by reference and realleges the allegations contained in paragraphs 39 through 63 above, as though fully set forth herein.

65. Counterclaim Count I is an action for a declaration of noninfringement of the claims of the '933 patent arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the Patent Laws of the United States, 35 U.S.C. § 100 *et seq.*

66. MetroPCS does not infringe and has not infringed any claim of the '933 patent, either directly or indirectly, or literally or under the doctrine of equivalents.

67. As demonstrated by the complaints filed by Celltrace against MetroPCS and the defenses and counterclaims raised by MetroPCS in this action, an actual and justiciable controversy exists between MetroPCS and Celltrace regarding the noninfringement of the '933 patent.

68.     To the extent that MetroPCS's pending motion to dismiss is not granted in its entirety, a judicial declaration of noninfringement is necessary and appropriate to resolve this controversy.

## COUNT II

### DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '933 PATENT

69.     MetroPCS incorporates by reference and realleges the allegations contained in paragraphs 39 through 68 above, as though fully set forth herein.

70.     Counterclaim Count II is an action for a declaration of unenforceability of the claims of the '933 patent arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the Patent Laws of the United States, 35 U.S.C. § 100 *et seq.*

71.     The claims of the '933 patent are unenforceable in whole or in part under the doctrine of unclean hands.

72.     The claims of the '933 patent are unenforceable in whole or in part under the doctrine of patent misuse.

73.     The claims of the '933 patent are unenforceable in whole or in part under the doctrine of prosecution laches, because Plaintiff, the Acacia Entities, and others involved in the prosecution of the application that led to the '933 patent and/or related applications unreasonably and inexcusably delayed seeking and obtaining the claims of the '933 patent.

74.     The '933 patent is unenforceable because of inequitable conduct by the applicants, their attorneys, and/or agents during the prosecution of the '989 application, which issued as the '933 patent on June 23, 2009, as described, for example, in paragraphs 21 through 37 above, which MetroPCS incorporates by reference and realleges as though fully set forth herein.

75.    As demonstrated by the complaints filed by Celltrace against MetroPCS and the defenses and counterclaims raised by MetroPCS in this action, an actual and justiciable controversy exists between MetroPCS and Celltrace regarding the unenforceability of the '933 patent.

76.    To the extent that MetroPCS's pending motion to dismiss is not granted in its entirety, a judicial declaration of unenforceability is necessary and appropriate to resolve this controversy.

**COUNT III**

**DECLARATORY JUDGMENT OF INVALIDITY OF THE '933 PATENT**

77.    MetroPCS incorporates by reference and realleges the allegations contained in paragraphs 39 through 76 above, as though fully set forth herein.

78.    Counterclaim Count III is an action for a declaration of invalidity of the claims of the '933 patent arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the Patent Laws of the United States, 35 U.S.C. § 100 *et seq.*

79.    The claims of the '933 patent are invalid for failure to comply with one or more of the conditions for patentability as set forth in Title 35 of the United States Code, including without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

80.    As demonstrated by the complaints filed by Celltrace against MetroPCS and the defenses and counterclaims raised by MetroPCS in this action, an actual and justiciable controversy exists between MetroPCS and Celltrace regarding the invalidity of the '933 patent.

81.    To the extent that MetroPCS's pending motion to dismiss is not granted in its entirety, a judicial declaration of invalidity is necessary and appropriate to resolve this controversy.

## COUNT IV

## **ATTEMPTED MONOPOLIZATION**

82.    MetroPCS incorporates by reference and realleges the allegations contained in paragraphs 39 through 81 above, as though fully set forth herein.

83.    Counterclaim Count IV is an action arising under the antitrust laws, Title 15, United States Code, 15 U.S.C. § 1 *et seq*.

84.    Upon information and belief, Celltrace and the Acacia Entities obtained the '933 patent through fraud on the PTO during the prosecution of the '989 application.  Celltrace and the Acacia Entities' fraud included knowing and willful fraudulent omissions and misrepresentations concerning the prior art and scope of the patented inventions, made with an intent to mislead or deceive the patent examiner, as described, for example, in paragraphs 21 through 37 above, which MetroPCS incorporates by reference and realleges as though fully set forth herein.

85.    Upon information and belief, the '933 patent would not have issued but for the knowing and willful fraudulent omissions and misrepresentations concerning the prior art and scope of the patented inventions during the prosecution of the '989 application.

86.    Celltrace's and the Acacia Entities' attempted enforcement of the fraudulently procured '933 patent strips Celltrace and the Acacia Entities of any immunity to the United States Antitrust laws.

87.    Upon information and belief, after issuance of the fraudulently obtained '933 patent, Celltrace and the Acacia Entities filed this suit in the name of Celltrace against MetroPCS with knowledge that the '933 patent is invalid, unenforceable, and not infringed.  For example:

a. Upon information and belief, Celltrace and the Acacia Entities knew before bringing suit that the '933 patent is invalid over at least the prior art GSM standards, and because the alleged inventions of at least claims 17 through 20, as interpreted by Celltrace and the Acacia Entities, are not directed to subject matter that the applicants regarded as their invention.

b. Upon information and belief, Celltrace and the Acacia Entities knew before bringing suit that the '933 patent is unenforceable due to the inequitable conduct by the applicants, their attorneys, and/or agents during the prosecution of the '989 application before the PTO.

c. Upon information and belief, Celltrace and the Acacia Entities knew before bringing suit that MetroPCS does not infringe the '933 patent. For example, as described in MetroPCS's motion to dismiss, Celltrace and the Acacia Entities know that MetroPCS does not make, use, sell, offer for sale, or import the entire accused instrumentality.

88. Celltrace's and the Acacia Entities' litigation against MetroPCS was and is objectively baseless. No reasonable litigant could realistically expect success on the merits, because the asserted patent is clearly invalid, unenforceable, and not infringed.

89. Upon information and belief, Celltrace's and the Acacia Entities' litigation against MetroPCS was and is motivated by a subjective intent to abuse the litigation process to interfere with MetroPCS's business, rather than obtain judicial relief. For example, upon information and belief, Celltrace and the Acacia Entities improperly and illegally initiated this frivolous litigation against MetroPCS for the purpose of extorting a settlement payment from MetroPCS based solely upon litigation cost avoidance.

90. Celltrace's and the Acacia Entities' litigation against MetroPCS constitutes sham litigation, and strips Celltrace and the Acacia Entities of any immunity to the United States Antitrust laws.

91. The relevant market for purposes of this counterclaim is the United States market for cellular communication services (the "Relevant Market"). Upon information and belief, discovery is likely to show that various other markets and/or sub-markets exist relating to cellular communication services, including without limitation, cellular telephone text messaging services, Short Message Service protocols, Multimedia Messaging Service protocols, cellular communication services using the CDMA standards, and cellular communications services using the GSM standards, among others.

92. The Relevant Market consists of equipment and services that enable cellular communications. Cellular communication systems are built and operated in accordance with international standards, including without limitation the GSM standards and the CDMA standards. These standards take years to develop, and features of the standards evolve over the course of many years. Alternatives would thus require implementation of entirely new cellular communication networks that operate in accordance with revised standards that have yet to be developed. The Relevant Market is thus highly capital intensive, presents significant barriers to entry, and constitutes a distinct and identifiable product market.

93. As construed by Celltrace and the Acacia Entities, the claims of the '933 patent are so broad that any provider of cellular communications equipment and services in the United States requires a license under the '933 patent or risks being sued by Celltrace and the Acacia Entities for patent infringement. Accordingly, as construed by Celltrace and the Acacia Entities, this patent dominate the Relevant Market.

94. Celltrace and the Acacia Entities have asserted the '933 patent in Celltrace's name through litigation against MetroPCS and several other companies operating in the Relevant Market, collectively comprising the vast majority the Relevant Market, including AT&T Inc.; AT&T Mobility LLC f/k/a Cingular Wireless LLC; T-Mobile USA, Inc.; Alltel Corporation; Alltel Communications, LLC; Etex Telephone Cooperative Inc.; Etex Communications, L.P.; Spint Nextel Corporation; Sprint Spectrum L.P.; Sprint Communications Company L.P.; Nextel Operations, Inc.; Nextel West Corp.; Nextel of California, Inc.; Nextel Communications of the Mid-Atlantic, Inc.; Nextel of New York, Inc.; Nextel South Corp.; Nextel of Texas, Inc.; United States Cellular Corporation; and Cellco Partnership d/b/a/ Verizon Wireless.

95. Upon information and belief, Celltrace and the Acacia Entities initiated these litigations for the purpose of extorting settlement and license fees based solely upon litigation cost avoidance, with the specific intent of acquiring monopoly power within the Relevant Market.

96. Upon information and belief, Celltrace and the Acacia entities are taking advantage of the highly capital intensive Relevant Market that presents significant barriers to entry, to force companies to either abandon the market, face the high cost of patent litigation, or pay Celltrace and the Acacia Entities license and settlement fees for at least the '933 patent that is known to be invalid, unenforceable, and not infringed. Celltrace and the Acacia Entities thus exhibit market power in the Relevant Market, and have a dangerous probability of successfully monopolizing that market.

97. Upon information and belief, Celltrace and the Acacia Entities, by pursuing costly and frivolous patent infringement litigations against MetroPCS and other companies operating in the Relevant Market based upon a patent that Celltrace and the Acacia Entities know is invalid,

unenforceable, and not infringed, have willfully attempted to extend the '933 patent beyond its lawful scope.   Celltrace and the Acacia Entities have thereby willfully engaged in anticompetitive and predatory conduct designed to illegally maintain and/or extend their power in the Relevant Market.

98.    Through their illegal anticompetitive conduct, Celltrace and the Acacia Entities have attempted to monopolize the Relevant Market, in violation of 15 U.S.C. § 2.

99.    Upon information and belief, the targets of Celltrace's and the Acacia Entities' patent assertions will pass along all or part of any license fees paid to Celltrace and the Acacia Entities to United States consumers in the Relevant Market in the form of higher prices and/or reduced services, among other things.

100.    Celltrace's and the Acacia Entities' illegal anticompetitive conduct has caused and will continue to cause injury and damages to MetroPCS in the form of, for example, lost profits, damage to the reputation and goodwill of MetroPCS's business, and attorneys fees and other costs associated with this litigation.

101.    Unless Celltrace and the Acacia Entities are enjoined, Celltrace's and the Acacia Entities' unlawful conduct will continue and MetroPCS will continue to sustain injury and damages.

**COUNT V**

**UNFAIR COMPETITION UNDER CALIFORNIA
BUSINESS & PROFESSIONS CODE §§ 17200 *et. seq.***

102.    MetroPCS incorporates by reference and realleges the allegations contained in paragraphs 39 through 101 above, as though fully set forth herein.

103.    Counterclaim Count V is an action arising under the California Business and Professions Code § 17200 *et seq*.

24

104.    Upon information and belief, Celltrace's and the Acacia Entities' conduct described above in paragraphs 82 through 101 was undertaking willfully and with anticompetitive intent.

105.    Upon information and belief, Celltrace and the Acacia Entities, by pursuing costly and frivolous patent infringement litigations against MetroPCS and other companies operating in the Relevant Market based upon a patent that Celltrace and the Acacia Entities know is invalid, unenforceable, and not infringed, have willfully attempted to extend the '933 patent beyond its lawful scope.    Celltrace and the Acacia Entities have thereby willfully engaged in anticompetitive and predatory conduct designed to illegally maintain and/or extend their power in the Relevant Market, including within the State of California.  Such anticompetitive conduct constitutes unfair competition and unfair business practices in violation of the California Business & Professions Code §§ 17200 *et seq.*

106.    Under California Business & Professions Code §§ 17200 *et seq.*, MetroPCS is entitled to an order enjoining Celltrace and Acacia from making any false, misleading, defamatory, unfair or malicious statements pertaining to MetroPCS or its products and services, including allegations of patent infringement, and enjoining the exclusionary conduct alleged in paragraphs 82 through 105 above.  MetroPCS is also entitled to restitution for reasonable attorneys' fees and costs in connection with this Count, as well as all appropriate restitution and equitable relief.

## **PRAYER FOR RELIEF**

WHEREFORE, MetroPCS prays for a judgment as follows:

A.    Dismissing Celltrace's Complaint against MetroPCS with prejudice;

B.    Denying all remedies and relief sought by Celltrace in its Complaint;

C.      Declaring that MetroPCS does not infringe and has not infringed any claim of the '933 patent, either directly or indirectly, or literally or under the doctrine of equivalents;

D.      Declaring that the claims of the '933 patent are unenforceable under the doctrines of unclean hands, patent misuse, prosecution laches, and inequitable conduct;

E.      Declaring that the claims of the '933 patent are invalid for failure to comply with one or more of the conditions for patentability as set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112;

F.      Declaring that this is an exceptional case pursuant to 35 U.S.C. § 285, and awarding MetroPCS its costs, expenses, and disbursements in this action, including reasonable attorneys' fees;

G.      Enjoining Celltrace from asserting the '933 patent against MetroPCS or its customers, and from making any statements or allegations concerning infringement of its patents by MetroPCS or its customers;

H.      Adjudging that Celltrace and the Acacia Entities have violated 15 U.S.C. § 2, and awarding damages and/or restitution to MetroPCS sufficient to compensate it for Celltrace's and the Acacia Entities' violation of 15 U.S.C. § 2, in an amount to be proven at trial, including trebled damages, attorneys fees, and prejudgment interest;

I.      Adjudging that Celltrace and the Acacia Entities have violated California Business & Professions Code §§ 17200 *et seq.*, and awarding restitution to MetroPCS sufficient to compensate it for Celltrace's and the Acacia Entities' violation of California Business & Professions Code §§ 17200 *et seq.*, in an amount to be proven an trial, including reasonable attorneys' fees and costs, as well as all appropriate equitable relief;

J.      Awarding MetroPCS its costs in this action; and

K.      Awarding MetroPCS such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

MetroPCS hereby demands a trial by jury on all issued so triable.


Dated:  March 12, 2010

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.
State Bar No. 00785097
POTTER MINTON
A Professional Corporation
110 N. College Ave., Suite 500
Tyler, TX 75702
Tel:  903-597-8311
Fax:  903-593-0846
Email:  glennthames@potterminton.com

Jon T. Hohenthaner (admitted *pro hac vice*)
Andrew G. Heinz (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022-4675
Tel:  212-446-4800
Fax:  212-446-4900
Email: jon.hohenthaner@kirkland.com
        andrew.heinz@kirkland.com

Garreth A. Sarosi
State Bar No. 24039373
MetroPCS Communications, Inc.
MetroPCS Wireless, Inc.
2250 Lakeside Boulevard
Richardson, TX 75082
Tel:  469-330-4784
Fax:  866-715-8790
Email:  gsarosi@metropcs.com

*Attorneys for Defendants MetroPCS*
*Communications, Inc. and MetroPCS Wireless, Inc.*

27

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 12, 2010.  Any other counsel of record will be served by First Class U.S. mail on this same date.

*/s/ E. Glenn Thames, Jr.*

E. Glenn Thames, Jr.
